**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-30048**
**Summary Calendar**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**ISRAEL ALANIS, a/k/a Joe,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Louisiana**
**(94-CR-30013)**
_____

July 27, 1995

Before DAVIS, BARKSDALE, and DEMOSS, Circuit Judges.

PER CURIAM:[1]

Israel Alanis challenges the denial of his motion to suppress.
We **AFFIRM**.

I.

In August 1992, Alanis was, *inter alia*, arrested on state
charges of conspiracy to distribute, and distribution of, cocaine.
Following his arrest, Alanis initiated a conference with the FBI
concerning information he had about the "Ceballos Family", a large

---

[1] Local Rule 47.5.1 provides: "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession." Pursuant to that rule, the court has determined
that this opinion should not be published.

cocaine distributor. Alanis arranged for his attorney and a friend to assist him in this meeting. Neither Alanis nor his attorney were aware that the friend was a Government informant.

The FBI was unimpressed with Alanis' information; but, nearly a year and a half later, Alanis was indicted on federal drug charges, based, in part, on his statements at the FBI meeting. Alanis' motion to suppress these statements was denied. He entered a conditional guilty plea, reserving the right to appeal the suppression ruling, and was sentenced, *inter alia*, to 168 months imprisonment.

## II.

Alanis raises four bases for suppression. For a motion to suppress, we review the district court's findings of fact for clear error; questions of law are reviewed *de novo*. *E.g., United States v. Wilson*, 36 F.3d 1298, 1303 (5th Cir. 1994).

## A.

Alanis urges that his statements at the FBI meeting are inadmissible because he was not given *Miranda* warnings prior to the meeting. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Such warnings must be given prior to a custodial interrogation. *E.g., United States v. Pofahl*, 990 F.2d 1456, 1487 (5th Cir.), *cert. denied*, 114 S. Ct. 560 (1993). But, outside the context of custodial interrogation, if an individual chooses to answer the Government's questions, instead of asserting the constitutional privilege, the response to those questions are considered voluntary, and are not barred by the Fifth Amendment. *Minnesota v.*

*Murphy*, 465 U.S. 420, 429-34 (1984).

The Government insists the FBI meeting was not a "custodial interrogation", noting that Alanis initiated it, and was free to terminate the questioning at any time. Furthermore, Alanis' lawyer, who had counseled him not to speak with the officers, was present throughout the meeting.

Even assuming custodial interrogation, we agree with the district court that, although no formal *Miranda* warnings were given, Alanis was apprised sufficiently of the rights protected by *Miranda*. Alanis' right to an attorney was self-evident, because his attorney was present at all times. His attorney had advised him to remain silent, and the Government advised him that his statements could be used against him. Under the circumstances of this meeting, we are persuaded that the Government's procedure effectively secured Alanis' privilege against self-incrimination. There was no *Miranda* violation.

## B.

Alanis contends that the presence of his friend, unknown to Alanis as a Government informant, compromised the confidentiality of his attorney-client relationship, and, therefore, violated his Sixth Amendment rights. Although Government intrusion into the attorney-client relationship may violate the Sixth Amendment, *Weatherford v. Bursey*, 429 U.S. 545, 552-53 (1977), Alanis does not allege that his friend was present during any confidential communications between him and his attorney, or that the Government received any information regarding those communications. Rather,

Alanis asserts only that his friend's mere presence at the meeting violated his Sixth Amendment right due to his friend's unknown capacity as a Government informant.  This, standing alone, does not establish an unconstitutional intrusion. *Id*. at 554-56.

## C.

Alanis claims ineffective assistance of counsel arising from a conflict of interest.  The alleged conflict existed because his attorney, Thompson, also later represented his friend, who, due to his role as an informant, had an adverse interest.  Assuming, *arguendo*, the existence of a conflict, Alanis must also demonstrate that his representation was adversely effected as a result. **Strickland v. Washington**, 466 U.S. 668, 692 (1984).  Alanis does not identify any prejudice arising from the alleged conflict; his ineffective assistance claim fails.  *See* **Foxworth v. Wainwright**, 516 F.2d 1072, 1077 n.7 (5th Cir. 1975).

## D.

Finally, Alanis complains that various promises made by the Government during the FBI meeting served to induce him to make incriminating statements, thereby rendering those statements involuntary. Government promises may give rise to involuntary statements, but, "depending on the totality of the circumstances, certain representations will not render a confession involuntary". **Hawkins v. Lynaugh**, 844 F.2d 1132, 1140 (5th Cir.), (internal quotation, citations, and footnotes omitted), *cert. denied*, 488 U.S. 900 (1988).  Alanis initiated the meeting, had counsel present at all times, and told his attorney of his desire to assist the FBI

- 4 -

before the meeting, and before any alleged promises. Finally, Alanis admits that it is unclear even whether any specific promises were made.[2]  Under these circumstances, we agree with the district court that Alanis' statements were voluntary.

## III.

For the foregoing reasons, the judgment is

**AFFIRMED**.

---

[2]  The district court found that the Government did represent that Alanis' cooperation would be made known to the prosecutors, that he would likely get a percentage of any forfeitures resulting from his information, that he could be placed under witness protection, if needed, and that efforts would be made to secure his release on bond if he cooperated sufficiently.